IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DAVID A. KENNEY,**                  Case Number 3:09 CV 2440

    Plaintiff,                       Judge Jack Zouhary

    v.                             REPORT AND RECOMMENDATION

**COMMISSIONER OF
    SOCIAL SECURITY**

    Defendant.                 Magistrate Judge James R. Knepp II

### Introduction

Plaintiff David Kenney appeals the administrative denial of disability insurance benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons discussed below, the undersigned recommends the Commissioner's decision be affirmed.

### Factual Background

Plaintiff is a high school graduate who went to business school for one year, and then obtained a realtor's license. (Tr. 189). Plaintiff testified he was self-employed at a business he owned – Leister Game and Novelty Co., LLC (Leister). He purchased Leister in February 2004 and before that worked there as a manager. (Tr. 191). Plaintiff was the "president, corporate officer . . . [and] 100 percent shareholder" of Leister. (Tr. 195).

Leister is a manufacturing company that makes novelty items for party stores. (Tr. 192).

Plaintiff also previously owned Big Dave's Enterprises (Big Dave's), another small manufacturing company. (Tr. 193). He liquidated Big Dave's in 2005 and it was absorbed into Leister. (Tr. 194). Before Plaintiff liquidated Big Dave's, gross yearly sales were approximately $30,000-$40,000 in 2003 and 2004. (Tr. 194). Gross yearly sales for Leister were around $110,000 to $130,000. (Tr. 193). When Plaintiff purchased Leister, he put $400,000 in personal savings into the business. (Tr. 191-92).

Plaintiff hired two sales representatives because he could no longer do that work. (Tr. 196). The business had two other manufacturing employees who worked six hours per day, two to three days per week. (Tr. 196-97). The two manufacturing employees manufacture, assemble, ship, and receive Leister's products. (Tr. 196). When the business was doing better, Plaintiff had seven or eight employees. (Tr. 192). Plaintiff also employs an accountant to do payroll and taxes. (Tr. 206). Plaintiff stated that "[i]f the sales would continue, if they would improve by some chance these sales reps I hired, then I would hire an office manager to do my job." (Tr. 205).

Plaintiff testified that at the time of the hearing he worked an "average [of] anywhere from three to four hours a day . . . three to four hours a week." (Tr. 199). He testified that he had cut back his hours in the last year and a half. (*Id.*). He stated that when he started the business, he worked "maybe . . . five days, six hours a day." (*Id.*). He also testified that "[r]ight now I average two to three hours when I do go in and I have like I say two to three days a week I go in" in 2008 and 2009. (Tr. 201). Plaintiff testified that he had "never worked 40 [hour] weeks," but had averaged 20 hour weeks in earlier years. (Tr. 198)

Plaintiff testified he was "trying to rebuild [the] business" and therefore puts most of the money the company makes back into the company. (Tr. 194-95). The previous owner – Plaintiff's

step-father – "did not put money into the business to keep it going." (Tr. 194).

In January 2007, Plaintiff reported he had "waived a salary for [his] position" but he "would expect to pay roughly $35,000.00 for someone of my experience to perform the work that I do in the company." (Tr. 41). Plaintiff later argued that when he made the $35,000 estimate, he "was referring to a full time employee[,]" which he is not. (Tr. 29). When asked what he would be paid if he worked for another company, Plaintiff responded:

> Well if I represent another company they wouldn't have me working there. I'm not able to go in. I have no set time as to when I can come in, how long I stay. Right now I average two to three hours when I do go in and I have like I say two to three days a week I go in and I'm drastically down.

(Tr. 201).

Plaintiff also testified about the value of his services:

> Q: What do you think your services are worth to the business?
>
> A: Right now not a whole lot. I'd say very questionable. I have a lot of knowledge of many years of being associated with it, but –
>
> Q: Monthly or yearly what do you think?
>
> A: I'd say I would pay myself $12,000 a year, $1,000 a month is what I plan on – what I've been averaging and whatever I draw I could possibly get back I would be thrilled, but I no longer own the building so there goes that equity.

(Tr. 204-05). Plaintiff estimated at a different time that he is "worth $800 to $1000 per month" to the business. (Tr. 29).

In April 2009, when asked how much he takes in a "draw" from the business, Plaintiff testified: "I average about $12,000 a year." (Tr. 190). He said he "take[s] it as needed, as it's there" and when asked if that meant $1,000 per month, he replied "If I can, yes." (Tr. 191). When asked what he meant by a "draw", Plaintiff testified: "Well I take it against my notes payable to myself as

my investment owner's equity into starting the business." (Tr. 191).

Plaintiff also testified that he takes $800 per month for his medical insurance separate from the $1,000 draw. (Tr. 206). The ALJ questioned him about this:

Q: So technically your gross draw is $1,800 a month?

A: I guess you would say that, yeah.

(Tr. 206-07). Plaintiff later testified that he has not actually been taking the draw of $1,000 per month. (Tr. 210). Plaintiff's designated salary – which he was not receiving – was $575 per week. (Tr. 211). Plaintiff, as president and owner of the business, is the person who makes the decisions about how much he should be paid. (Tr. 213-14). Plaintiff also decides whether to pay himself a salary or to repay himself for the amount he invested in Leister. (*Id.*).

Plaintiff also testified that "the employees pretty much watch themselves. They have the keys [to] the building. They let themselves in. They lock up when they leave, put the alarm on so I'm not present half the time." (Tr. 201-02). Plaintiff stated his business is in jeopardy and that his co-pays on his prescriptions are over $200 per month. (Tr. 207-08).

Plaintiff testified that he sold the business to "an investor friend" in 2008 for $250,000 but only $20,000 to $30,000 actually changed hands. (Tr. 203). Plaintiff used the rest of the money to pay off a note to his step-father and "whatever I took out, I put back into the business and I probably netted myself a couple thousand dollars." (Tr. 203). At the time of the hearing, Plaintiff still had two notes payable to his grandmother and his father for approximately $45,000 and a note payable to himself for $270,000 invested in the business. (Tr. 204).

Plaintiff's 2006 tax returns show no wages, but $5,000 in capital gain. (Tr. 176). Plaintiff's 2007 tax returns show no wages, but $4,570 in business income and $2,218 paid by the business for

4

Plaintiff's health insurance. (Tr. 174). Plaintiff's 2008 tax returns show $1,725 in wages and $7,002 paid by the business for Plaintiff's health insurance. (Tr. 164-67). The 2008 returns also show a net loss of over $30,000 for Leister. (Tr. 168).

## Procedural Background

Plaintiff applied for DIB on December 22, 2006, alleging a disability onset date of January 10, 2005. (Tr. 16). The state agency denied Plaintiff's application initially and on reconsideration. (Tr. 24, 31). Plaintiff requested a hearing. (Tr. 34). On April 29, 2009, an ALJ conducted a hearing in Toledo, Ohio. (Tr. 183-220). Plaintiff appeared with counsel and testified. (*Id.*).

On June 9, 2009, the ALJ issued a written decision denying Plaintiff's claim. (Tr. 11-15). The ALJ found that Plaintiff was not entitled to benefits because he had engaged in substantial gainful activity. (Tr. 15).

Plaintiff sought Appeals Council review and included additional evidence: 1) letters from Plaintiff and his attorney; 2) tax returns from 2006-2008; and 3) a work activity report filled out by Plaintiff dated June 16, 2009. The Appeals Council denied review on August 31, 2009, stating:

> In looking at your case, the Appeals Council considered the additional evidence and the contentions submitted in your letter dated June 21, 2009, and your representative's letter dated June 22, 2009, listed on the enclosed Order of Appeals Council. The new evidence is similar to the evidence that was before the Administrative Law Judge, and does not warrant any change in the Administrative Law Judge's decision.
>
> The contentions do not raise any new issue of law or fact. Essentially, the contentions are directed toward the Administrative Law Judge's evaluation of the evidence and testimony and consequently, the ultimate issue of "disability." The Appeals Council finds that the Administrative Law Judge fully considered and evaluated the evidence and reached the appropriate conclusion on the issues.

(Tr. 3-4). This denial rendered the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On October 19, 2009, Plaintiff filed the instant case. (Doc. 1).

## Standard of Review

Reviewing the denial of DIB, this Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting 42 U.S.C. § 405(g)). The court "may not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). However, procedural errors can be a basis for overturning the decision of the Commissioner, even if that decision is supported by substantial evidence. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## Standard for Disability

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. § 423(a) & (d). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20

C.F.R. § 416.1505(a). The Commissioner uses a five-step sequential evaluation process, found at 20 C.F.R. § 416.1520, to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers a claimant's residual functional capacity, age, education, and past work experience to determine if a claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## Discussion

Plaintiff challenges the ALJ's factual finding that Plaintiff engaged in substantial gainful activity and was therefore not disabled at any time from January 19, 2005 through March 30, 2008. In response, Defendant argues the ALJ's conclusion is supported by substantial evidence.

"If [a claimant is] able to engage in substantial gainful activity, [the Commissioner] will find

that [the claimant] is not disabled." 20 C.F.R. § 404.1571. As stated above, the burden is on Plaintiff at Step One to prove he is not engaged in substantial gainful activity. *See Walters*, 127 F.3d at 529; *Rupe v. Chater*, 81 F.3d 173 (10th Cir. 1996) (table) ("At step one, the claimant has the burden of showing he is not performing substantial gainful activity.").

"Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Activity is "substantial" if it "involves doing significant physical or mental activities." *Id.* § 404.1572(a). Work performed on a part-time basis may still be substantial. *Id.*; *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990). Activity is "gainful" if it "is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).

For a person who is self-employed, "[s]upervisory, managerial, advisory or other significant personal services that [a claimant] perform[s] . . . may show that [a claimant] is able to do substantial gainful activity." *Id.* § 404.1573(d). In determining whether to award benefits, the Commissioner "will consider [a claimant's] activities and their value to [claimant's] business to decide whether [claimant has] engaged in substantial gainful activity". *Id*. § 404.1575(a)(2). The regulations provide, with respect to self-employment:

> We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. . . . We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services.

*Id.* A Social Security Ruling explains further:

> In determining whether a self-employed individual is engaging in SGA [substantial gainful activity], consideration must be given to the individual's activities and their value to his or her business. Self-employment income alone is not a reliable factor in determining SGA, since it is influenced not only by the individual's services but also by such things as market conditions, capital investments, the services of other people, and agreements on distribution of profits. An individual's services may help

> build up capital assets during a period of development when no profits are evident, or they may reduce losses during temporary periods of poor business conditions.

Social Security Ruling (SSR) 83-34, 1983 WL 31256.

A claimant who earns more than a specific amount prescribed by the regulations is presumed to have engaged in substantial gainful activity. 20 C.F.R. § 404.1574(b)(2)(ii)(B); *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1029 (6th Cir. 1990). A claimant may rebut this presumption of substantial gainful activity "by evidence of the nature of the applicant's work, the conditions of employment and the adequacy of the applicant's performance." *Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 319 (6th Cir. 1990) (citing 20 C.F.R. § 404.1573). For the time periods relevant to this case, the amounts necessary to create the presumption are: $800 per month in 2004; $830 per month in 2005; $860 per month in 2006; and $900 per month in 2007.[1]

Whether a self-employed individual is engaged in substantial gainful activity is evaluated under three tests:

> (i) Test one: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section explain what we mean by significant services and substantial income for purposes of this test.
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth

---

[1] These figures are calculated using the formula in 20 C.F.R. § 404.1574(b)(2)(ii)(B): "multiplying $700 by the ratio of the national average wage index for the year 2 calendar years before the year for which the amount is being calculated to the national average wage index for 1998." The Social Security Administration lists the yearly national average wage index at: http://www.ssa.gov/OACT/COLA/AWI.html (last visited October 29, 2010).

>the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2); *see also* SSR 83-34, 1983 WL 31256.

If a business involves more than one person, services are "significant" if a person "contribute[s] more than half the total time required for the management of the business, or . . . render[s] management services for more than 45 hours a month regardless of the total management time required by the business." 20 C.F.R. § 404.1575(b)(1). Income is considered "substantial" if it "averages more than the amounts described in § 404.1574(b)(2)." *Id.* § 404.1575(c).

The ALJ's conclusion paragraph tracks the first test. (*See* Tr. 15); *see also* 20 C.F.R. § 404.1575(a)(2)(i) (a claimant is "engaged in substantial gainful activity if [he] render[s] services that are significant to the operation of the business and receive[s] a substantial income from the business"). The ALJ first found that Plaintiff's "services have been substantial, despite the fact that he works part-time, gets paid less, and performs fewer duties." (Tr. 15). Specifically, the ALJ found, based on Plaintiff's own testimony, that:

>his duties include contacting potential clients by phone, ordering and purchasing, giving orders regarding personnel issues, and shipping duties. The undersigned finds these services to involve significant physical or mental activities. This work activity also requires the use of his experience, skills, supervision, and responsibilities, and contributes substantially to the operation of the business.

(*Id.*). This conclusion is supported by Plaintiff's testimony that: he hired two sales representatives recently (Tr. 196), he has two other part-time manufacturing employees (*Id.*), and he monitors and enters sales orders into the computer (Tr. 197). Although Plaintiff argues conclusorily that his "testimony demonstrated that the actual work he performed was at a level that was not substantial in nature" (Doc. 18, at 8), Plaintiff's testimony about his work indicates otherwise. Although

Plaintiff may not have worked many hours, the ALJ recognized Plaintiff was essentially responsible for running the business. The ALJ's conclusion that Plaintiff's work was substantial is therefore supported by substantial evidence. *See, e.g.*, *Byington v. Chater*, 76 F.3d 246, 249 (9th Cir. 1986) ("By the numbers of hours worked, the duties Byington performed, and his level of responsibility, the ALJ was correct in finding that Byington's auto shop activities amounted to substantial gainful activity[.]"); *Rupe*, 81 F.3d 173 ("The Secretary considered the nature of Mr. Rupe's activities and their value to the business. His services were absolutely essential to the business, which would not continue without him."); *Tramper v. Sec'y of HHS*, 1991 WL 288904, *5 (W.D. Mich.) (affirming ALJ's conclusion that job as a restaurant owner and manager where plaintiff "testified that he took care of payroll, bookkeeping, quarterly reports, taxes, and estimated returns for the restaurant(s)" constituted substantial gainful activity).

There is also substantial evidence to support the ALJ's conclusion that Plaintiff's "services are also gainful." (Tr. 15). In this regard, the ALJ concluded:

> Although the company did not realize any profit, the services he performed are usually done for pay or for profit. In addition, the claimant testified that he paid himself $12,000 to $15,000 in 2007 from the business with an additional $800 per month to pay for health insurance. These earnings show that the claimant performed substantial gainful activity.

(*Id.*). This portion of the ALJ's decision is also supported by substantial evidence in the form of Plaintiff's testimony. First, the ALJ recognized that "the company did not realize any profit" but recognized that "the services [Plaintiff] performed are usually done for pay or profit." (Tr. 15); *see also* 20 C.F.R. § 404.1572(b) (recognizing that work may be gainful even if no profit is realized). Next, this conclusion is also supported by Plaintiff's testimony that he "average[d] about $12,000 a year" and that he took "[a]round $12,000 or $15,000" in 2007. (Tr. 190, 214). Any amount

11

between $12,000 and $15,000 a year is above the amounts provided for by 20 C.F.R. § 404.1574(b)(2), and therefore "substantial income" under 20 C.F.R. § 404.1575(c).

Although Plaintiff argues that he "operated Leicester at a loss in 2006, received a draw of $4,570.00 and health insurance coverage valued at $2,218.00 for a total income of $6,788.00 in 2007, and received income of $1,725.00 and health insurance coverage of $7,002.00 for a total income of $8,727.00 in 2008" (Doc. 18, at 8), the health of the business and Plaintiff's take-home income are not dispositive. *See* 20 C.F.R. 404.1572(b). There is some factual conflict within the record about how much money Plaintiff actually made each year, but it is not this Court's role to "try the case de novo, nor resolve conflicts in the evidence." *Cutlip*, 25 F.3d at 286. Although Plaintiff testified he did not receive a salary, *he* decided how much to pay himself, and therefore "[t]hat plaintiff chose not to pay himself a salary is not, by itself, dispositive." *Tramper*, 1991 WL 288904, *5. Additionally, "[s]upervisory, managerial, advisory or other significant personal services that [a claimant] perform[s] . . . may show that [a claimant] is able to do substantial gainful activity." 20 C.F.R. § 404.1573(d). While the business was not doing well economically, Plaintiff's role in managing the business is certainly gainful work – i.e., "the kind of work usually done for pay or profit." *Id.* at § 404.1572(b).

Even though there may be evidence to support a contrary conclusion, there is substantial evidence in the record – Plaintiff's own testimony – to support the ALJ's conclusion. *See Jones,* 336 F.3d at 477 ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ.").

Even if Plaintiff did not earn the $12,000 to $15,000 per year he testified to – as he now

12

argues, pointing to different amounts listed on his tax returns – he was engaged in substantial gainful activity as defined by the third test in the regulations. *See* 20 C.F.R. § 404.1575(a)(2)(iii) (claimant is "engaged in substantial gainful activity if [his] work activity . . . is clearly worth the amount shown in § 404.1574(b)(2) *when considered in terms of its value to the business*, or when compared to the salary that an owner would pay to an employee to do the work [he] is doing") (emphasis added). Plaintiff himself testified that the *value* of his services was at least $12,000. (Tr. 204-05). The ALJ pointed out that Plaintiff himself assessed "his employment [is] worth approximately $800 to $1,000 per month" and "reported that he feels his services are worth $12,000 annually." (Tr. 14). This amount – even excluding the $800 per month Plaintiff testified the business paid for his health insurance – is over the amount creating a presumption of substantial gainful activity. 20 C.F.R. § 404.1574(b)(2)(ii)(B); *Tyra*, 896 F.2d at 1029 (affirming ALJ's decision that claimant engaged in substantial gainful activity where claimant's earnings were above the regulatory amount); *see also Dierks v. Apfel*, 63 F. Supp. 2d 1028, 1033 (D. Neb. 1999) ("[A]lthough Dierks received little net income in 1994 and 1995, Dierks' work activity was worth $500 per month 'when considered in terms of its value to the business[.]'" (quoting 20 C.F.R. § 404.1575(a)(2)); *Strahan v. Shalala*, 1994 WL 543029, *3 (S.D. Tex.) ("Plaintiff offered nothing to rebut the ALJ's finding that his services to the station were worth $300 a month, even if the station was operating at a loss.").

      Based on the evidence presented, the ALJ could have reasonably concluded Plaintiff was engaged in substantial gainful activity. His decision is supported by substantial evidence.

## Conclusion and Recommendation

      Following review of the arguments presented, the record, and applicable law, this Court finds the Commissioner's decision denying a period of disability and DIB not contrary to law and

supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

s/James R. Knepp II<br>United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of mailing of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).